# UNITED STATE DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Legal Mail
Received

**LEON BUCKHALTER,**
Plaintiff

JAN 0 5 2022

Dade C.I.

3:22 CV 29. HLA. MCR

**v.**

**CASE NO.:_____**

**(To Be Assigned)**

**CENTURION OF FLORIDA, LLC,**
**HEALTH CARE PROVIDERS**
**Dr. FIGUEROA, MEDICAL DOCTOR,**
**SUWANNEE C.I.**
Defendants

FILED
1-10-2022
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

_____/

## COMPLAINT FOR VIOLATION OF CIVIL
## RIGHTS UNDER 42 U.S.C. SECTION 1983

Plaintiff, Leon C. Buckhalter, (Hereinafter, Plaintiff) pro-se, pursuant to 42 U.S.C. Section 1983 files this instant complaint for violation of Civil Rights against Defendants, Centurion of Florida, LLC, (Hereinafter, Centurion), Health Care Providers, and Dr. Figueroa, (Hereafter, Figueroa), Medical Doctor in their individual capacities.

## PRELIMINARY STATEMENT

The following civil complaint has been hand drafted and/or typed in the correct format that was provided by this Honorable Courts clerk as required. Plaintiff submits this civil rights complaint

as a pro-se litigant unskilled in the science of law and wishes for his complaint, and entreaties to this Honorable Court to be received as such. <u>Hall v. Bellman, 935 F.3d 1106, 1110 (10th Cir. 1991)</u>

**I.**                              **PARTIES TO THIS COMPLIANT**

**A.** Plaintiff: Leon C. Buckhalter, at all times material to this action was a resident of Suwannee C.I., 5964 U.S. Highway 90, Live Oak, FL. 32060.

**B.** Defendants:

<u>Def. No (1)</u>
Name: Centurion of Florida, LLC
Position: Health Care Provider
Employed at: Suwannee C.I.
Address: 7700 Forsyth Blvd., St. Louis, MO. 63105

<u>Def. No (2)</u>
Name: Dr. Figueroa, M.D.
Position: Medical Doctor
Employed at: Suwannee C.I.
Address: 5964 U.S. Highway 90, Live Oak, FL. 32060

## INTRODUCTION

This is an action for compensatory punitive and nominal damages alleging that the Defendants, contrary to the Eight and Fourteenth Amendments to the United States Constitution,

knowingly and willfully exercised deliberate indifference to the recognized rights of the Plaintiff, Leon C. Buckhalter while he was incarcerated at Suwannee Correctional Institution, beginning on or about June 15, 2019.

**II.**                              **JURISDICTION**

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, in that this is a civil action arising under the constitution and laws of the United States.

Jurisdiction is also invoked pursuant to 28 U.S.C. Section 1343 (A)(3), in that this action seeks to redress the deprivation, under color of state law, of the rights secured to Plaintiff/Buckhalter by the Eighth and Fourteenth Amendments to the United States Constitution.

Plaintiff's claims for relief are predicated on 42 U.S.C. Section 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiff by the constitution and laws of the United States and by 42 U.S.C. Section 1988, which authorized the award of attorney fees and cost to prevailing Plaintiff's in actions brought pursuant to 42 U.S.C. Section 1983.

III.                    **PRISONER'S STATUS**

Plaintiff, Leon C. Buckhalter, DC# 724366 is a convicted and sentenced prisoner.

IV.                    **STATEMENT OF CLAIM**

1)    The Plaintiff, Leon C. Buckhalter is a (72) year old disabled male inmate currently in the care, custody, and control of the F.D.O.C.

2)    Plaintiff suffers from a vascular condition which causes poor circulation in both his legs.

3)    On November 16, 2018 Doctor's assistant R. Corbin submitted a consult to Centurion's Utilization Management for the purpose of a procedure to correct the poor circulation in Plaintiff's legs. Composite Ex. (1)

4)    On May 23, 2019 Plaintiff submitted a sick-call request complaining of an open sore on his lower right leg, no circulation, swelling, and pain, due to having none of his previously prescribed medication. Composite Ex. (2)

5)    On May 28, 2019 approximately five days later Plaintiff was seen and evaluated by Dr. Alexis Figueroa. It was during this evaluating that Plaintiff advised Figueroa that he signed a consult

back on November 16, 2018 that had not been processed by Centurion's Utilization Management. Thus delaying Plaintiff's treatment for his serious medical condition. Composite Ex. (3)

6)    Dr. Figueroa wrote Plaintiff a prescription for antibiotic ointment due to the infection to his right lower leg, and further advised his assistant R. Corbin to submit an urgent consult for an (ATA). Composite Ex. (4) Page 1 of 2

7)    On June 10, 2019 Plaintiff submitted another sick-call request again complaining about the open infected sore on his lower right leg. Composite Ex. (4)

8)    On June 12, 2019 Plaintiff was seen and evaluated by S. Hancock, R.N. whom after examining Plaintiff's condition determined that it was now acute and needed to be re-evaluated. Composite Ex. (4)

9)    Plaintiff was again prescribed antibiotic ointment with the addition of 500MG Cipro for (10) days. Composite Ex. (5) Note: Plaintiff was not seen again regarding the infection until July 9, 2019 approximately (27) days later.

10)   On June 26, 2019 Plaintiff was transported to (MMCJ) Hospital for the purpose of an Arteriography and balloon placement

in both legs; however the procedure on Plaintiff's right leg was unsuccessful.

11)   After Dr. Soloman had completed the surgical procedure he personally advised Plaintiff that he would need to have a second procedure performed to correct the blood flow in his right leg, Re, (Revascularization).

12)   Dr. Soloman   wrote special orders advising Centurion and/or there agents or employees that Plaintiff would need to be returned as soon as available to receive the revascularization.

13)   On June 26, 2019 Plaintiff return to Suwannee C.I. and was placed in the institution infirmary for observation. Composite Ex. (6), Page 1-3

14)   On June 27, 2019 the following day Plaintiff was told to return to open population and he advised Dr. Figueroa that he was in severe pain, and that the infection on his right lower leg was getting worse. That he would be unable to care for himself.

15)   Plaintiff's pleadings went unheard and was told by Dr. Figueroa to contact medical if any problems arrised. Composite Ex. (6) Page (3)

16)    On June 28, 2019 Plaintiff returned to medical in severe pain complaining of numbness and loss of feeling in his lower right leg, and the persistent infection that Dr. Figueroa continued to ignore. Composite Ex. (7)

17)    After Dr. Figueroa reviewed Plaintiffs medical records from the surgeon Dr. Soloman, Dr. Figueroa now had subjective knowledge of the urgency of Plaintiff's condition. Composite Ex. (8)

18)    Dr. Figueroa then wrote and signed along with the Plaintiff an F.D.O.C. consultation request for Plaintiff to receive the revascularization recommended by the specialist Dr. Soloman on June 26, 2019. Composite Ex. (9) Note: Dr. Figueroa with full knowledge of Plaintiff's serious medical condition checked routine on the acuity of consultation thus once again delaying the Plaintiff's treatment knowing that he was suffering from severe pain and discomfort. Composite Ex. (9)

19)    On July 2, 2019 Plaintiff submitted his third sick-call request again advising the medical provider that the infection was still open and persistent. Composite Ex. (9)

20)  Five days later on July 9, 2019 Plaintiff was seen and evaluated by Centurion medical provider, S. Kemp (LPN) and L. Henderson (P.A.). <u>Composite Ex. (11) Pages 1-3</u>

21)  After both providers' examination it was determined that Plaintiff's infection on his lower right leg had once again considerably increased in size and damage.

22)  Both skin protocol and chronological record of Health Care explained, in detail Plaintiff's infected wounds were largely open surrounded by redness and displaying yellow and green discharge with odor. <u>Composite Ex. (11) Page 1-3</u>

23)  Yet once again Dr. Figueroa simply authorize another cycle of 500 MG Cipro antibiotic and sent Plaintiff back to his cell/dorm in excoriating pain and discomfort. <u>Composite Ex. (11)</u>

24)  This was Plaintiff's third time seeing Centurions medical providers for the same infection that continued to worsen without any alternative treatment at all. Note: <u>Even a layperson would have realized the treatment Plaintiff was receiving amounted to no treatment at all. Even after multiple cycles of the powerful antibiotic Cipro without any positive results, S. Kemp (LPN), L. Henderson</u>

<u>(P.A.) and Dr. Figueroa continued to allow Plaintiff's infection to fester while leaving him to suffer in severe pain</u>.

25)    These actions by the treating medical providers were more than mere negligence and as such an act of deliberate indifference to Plaintiff's visible serious medical needs.

26)    On July 23, 2019 Plaintiff reported to medical for his follow-up care due to the same infection and unsurprisingly after Centurion's providers S. Kemp (LPN), C. Henderson (P.A.)  and Dr. Figueroa completed their follow-up evaluation Plaintiff for the fourth time was prescribed another (14) day cycle of 500 MG Cipro antibiotic. <u>Composite Ex. (12)</u>

27)    During the above-mentioned clinic Plaintiff asked Dr. Figueroa why he had not returned to (MMCJ) Hospital as ordered and recommended by the specialist Dr. Soloman on June 26, 2019, and Dr. Figueroa's response was that the consult had not been approved.

28)    On August 1, 2019 Plaintiff submitted his fourth sick call request again alerting the medical provider that the infection is getting worse in his lower right leg and the pain is unbearable. <u>Composite Ex. (13)</u>

29)  On August 5, 2019 four days later Plaintiff was again examined by Dr. Figueroa during the above mentioned sick-call clinic. <u>Composite Ex. (14) Pages 1-2</u>

30)  During Dr. Figueroa's examination it was visually clear that Plaintiff's infections on his lower right leg had worsened to the point they were open displaying large blackened spots and more importantly that the Plaintiff was in severe pain. <u>Composite Ex. (14) Page 2 of 2</u>

31)  Even with full knowledge of Plaintiff's severely infected open discolored sore's Dr. Figueroa did nothing to combat the infections clearly demonstrating an act of deliberate indifference toward Plaintiff's serious medical condition and again these actions being more that mere negligence.

32)  Plaintiff pleaded with Dr. Figueroa as to why he was never sent back to Dr. Soloman for his "<u>Revascularization consult</u>" that he submitted on June 28, 2019 approximately (45) days earlier.

33)  Dr. Figueroa after reviewing Plaintiff's charts realized that Centurion's Utilization Management had refused to approve the recommended procedure requested by the specialist, Dr. Soloman on June 26, 2019.

34) For that reason Dr. Figueroa signed and submitted another [Urgent] consult explaining to utilization management that he highly recommends that Plaintiff be evaluated by a vascular surgeon, "A.S.A.P." Composite Ex. (15)

35) Plaintiff was then sent back to his cell/dorm in severe pain and discomfort without any medical assistance or medication to ease the pain.

36) On August 21, 2019 Plaintiff submitted his fifth sick-call request complaining of severe pain from the infection in his lower right leg. Composite Ex. (16)

37) On August 23, 2019 Plaintiff was seen and examined by S. Hancock, (R.N.); Nurse Hancock observed several lesions with discoloration, redness, and breakdown of skin on Plaintiff's right lower leg. Composite Ex. (17) Page-3

38) Plaintiff advised Nurse Hancock that his leg has been infected for several months and the only treatment he ever received was ointment and Cipro with no positive results.

39) Nurse Hancock notified Dr. Figueroa and explained in detail Plaintiff's serious medical condition and his urgent need for treatment.

40) Dr. Figueroa without even examining Plaintiff's severe condition advised Nurse Hancock to place Plaintiff back on the call out for August 26, 2019 for further evaluation. <u>Composite Ex. (17)</u> <u>Page 3</u>

41) This would be the third time Dr. Figueroa with full knowledge of the urgency of Plaintiff's serious medical condition just ignored Plaintiff's severe condition and again delayed any further treatment. Note: <u>Even a layperson would have recognized the Plaintiff's</u> <u>emergency need for immediate medical attention</u>.

42) On August 26, 2019 Plaintiff returned to the medical department in severe  pain and was examined by B. Bodley, (P.A.), nurse Bodley seen Plaintiff's injuries and described them as follows: 1.) Right lower extremity cellulites/chronic edema, and painful. 2.) Waiting for vascular consult/Lake Butler. 3.) Redness, warm to touch, hairless. <u>Composite Ex. (18)</u>

43) Once again Plaintiff was given a tiny ointment pack, and a few Ibuprofen and sent back to his cell/dorm in severe pain, Dr. Figueroa didn't even examine Plaintiff's injuries as he said he would three days prior.

44) Again the treatment provided by Centurions medical providers amounted to no treatment at all.

45) Centurion, their agents and/or employees whom participated in treating Plaintiff's severe and painful medical condition were all aware that the antibiotics never had any positive results. Yet with full knowledge that Plaintiff's condition over a period of three months continued to worsen he was left to suffer in severe pain and ultimately suffering irreversible damage as a result of Centurions and/or their agents or/employees deliberate indifference towards his serious medical needs.

46) These actions and/or inactions by the above-mentioned providers were more than mere negligence.

47) On September 3, 2019 the major/name unknown and Sgt. Kerr while making their security check in Plaintiff's dormitory noticed the infected sores on Plaintiff's right lower leg, and immediately told him to declare an emergency and go to the medical department.

48) Plaintiff did as security advised and was taken to medical and was first examined by Dr. Figueroa, Figueroa after examining Plaintiff's infections told him to wait in the hallway while he

researched yet another antibiotic to attempt to cure Plaintiff's infection. Note: <u>Dr. Figueroa's actions given the severity of Plaintiff's injury and the severe pain was once again completely unethical and clearly below the standard of care</u>.

49)    While Plaintiff was sitting outside of Dr. Figueroa's door nurse Holmes approached Plaintiff in his wheelchair and as soon as she noticed the infection she immediately told Plaintiff that his leg was contaminated with gangrene.

50)    Nurse Holmes then went straight to Dr. Figueroa and told him that the Plaintiff's leg was contaminated with gangrene. Note: <u>Dr. Figueroa is a licensed medical doctor whom performed multiple examinations on Plaintiff's infectious and contaminated right leg, for over a period of (3) months yet continued to do nothing, but prescribe an ointment and antibiotics without any positive results allowing Plaintiff's infection to fester subjecting him to months of severe pain and suffering, and ultimately irreparable damage</u>.

51)    After, and only after Nurse Holmes advised Dr. Figueroa of Plaintiff's contaminated condition Dr. Figueroa made note of Plaintiff's condition and transferred him to Jacksonville Memorial Hospital. <u>Composite Ex.(19) Pages 1-2</u>

52) Dr. Figueroa's own description of Plaintiff's injuries clearly show that his serious medical condition warranted more than just the inadequate treatment of ointment and antibiotics.

53) The specialist Dr. Soloman made it clear on June 26, 2019 that Plaintiff would need a revascularization procedure to correct the circulation in his right leg.

54) The consult for such procedure was written and signed on June 28, 2019 and submitted to Centurions Utilization Management for approval. Composite Ex. (19)

Note: Centurions Utilization Management refused to approve Plaintiffs consults for needed treatment.

55. On August 5, 2019 a second consult was resubmitted as [urgent] to Centurions Utilization Management explaining in detail Plaintiff's serious medical condition, "highly recommending that Plaintiff be returned to vascular surgeon A.S.A.P." Composite Ex. (15)

56. It is Centurion's own policy and procedure that urgent consult's are approved and completed within (20) days. Note: Plaintiff till this date, 10-8-21 was never approved and/or received the surgical procedure, RE: Revascularization ordered

by the specialist on 6-26-21, and as a direct result of Centurion, and/or their agents or employees deliberate indifference Plaintiff suffered months or severe pain and ultimately the loss of his right leg causing disfigurement and mobility disability for the rest of his life.

57. Plaintiff was transferred to Jacksonville Memorial Hospital on 9-3-19 where he began I.V. treatment in an attempt to combat the gangrene in his right leg, which was unsuccessful.

58. On October 10, 2019 Plaintiff underwent surgery to amputate his right leg above the right knee.

59. Plaintiff contends that Centurion and Doctor Figueroa, his primary care providers both acted with deliberate indifference to his serious medical needs, that the treatment provided by both Figueroa and Centurion amounted to no treatment at all, and further Plaintiff contends that the actions and omissions of both Centurion and Figueroa resulted in the amputation of Plaintiff's right leg above the knee.

## **IN CONCLUSION**

The Plaintiff alleges that Centurions Utilization Managements failure to carry out the specialist orders on multiple occasions to correct the circulation in Plaintiff's right leg, and doctor Figueroa's failure to properly diagnose and treat Plaintiff's visible serious and life threatening condition in a timely manner caused the Plaintiff extreme pain and suffering over the course of three months and ultimately the amputation of Plaintiff's right leg above the knee.

## **Count-I, 42 U.S.C. §1983 Claim for Deliberate Indifference Against Centurion**

1. Plaintiff hereby incorporates by reference the allegations contained in paragraphs (1) through (59) above; as if set forth in full herein.

2. Count (I) is brought against Defendant Centurion pursuant to 42 U.S.C. Section 1983 for deliberate indifference to the critical medical needs of Mr. Buckhalter, as an individual who suffered from a serious medical condition, R.E. no circulation in his right leg that required the previously prescribed surgical procedure recommended by the treating specialist, doctor

Soloman to prevent any further substantial health deterioration, pain and/or irreparable damage.

3. Centurion and/or its agents or employees knew on June 26, 2019 that Buckhalter suffered from poor circulation in his right leg and if the condition was not adequately treated by the specialist it could result in serious irreparable harm, pain, and discomfort.

4. By July 2, 2019 Centurion and/or is agents or employees knew that Plaintiff was suffering from a serious infection and was in need of the surgical procedure recommended by the specialist to prevent any further pain and/or deterioration.

5. Despite knowledge of Plaintiff's serious medical needs, Centurion and/or its agents and employees were deliberately indifferent to those serious medical needs by failing to carry out and approved the specialist treatment plan as recommended.

6. Centurion and/or its agents or employees knew that taking no action and/or insufficient action could or would result in the rapid and permanent deterioration of Plaintiff's health, further subjecting him to unwarranted pain and discomfort.

7. Plaintiff alleges Centurion violate its custom, policy, procedure and/or practice to outright deny timely and adequate treatment due to Centurions Utilization Management failing to timely approve multiple urgent consults written by the specialist recommending the proper medical treatment to combat Plaintiff's previously diagnosed serious medical condition.

8. As a direct and proximate result of Centurions Utilization Managements failure to approve the specialist consults for treatment, the deliberate indifference towards Plaintiff's serious medical needs, the untimely and inadequate treatment of Plaintiff's severely infected lower right leg which ultimately became contaminated with Gangrene, Plaintiff was subjected to months of extreme pain and discomfort and the amputation of his right leg above his knee.

9. Plaintiff charges that Centurion and/or its agent or employees, contrary to the Eight Amendment to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to insure that Plaintiff received prompt medical treatment for his serious medical condition even after

gaining knowledge by the specialist of the severity of his condition.

10. Centurion's failure to promptly act was an exercise of deliberate indifference to the health, safety, welfare, and Constitutional Rights of Plaintiff under color of state law.

11. Centurion and/or its agent or employees, with full knowledge of the unconstitutional nature of their actions, exercised deliberate indifference to Plaintiff's serious medical needs which resulted in an infectious contamination which turned to Gangrene and the amputation of Plaintiff's right leg above the knee subjecting him to unwarranted pain and suffering for over a period of three months.

## Count-II, 42 U.S.C. §1983 Claim for Deliberate Indifference Against Dr. Figueroa

1. Plaintiff hereby incorporates by reference the allegations contained in paragraphs (1) through (59) above, as if set forth in full herein.

2. Plaintiff charges that Dr. Figueroa, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by

failing to provide the proper, necessary and recommended care and treatment in a timely manner from November 15, 2018 through September 3, 2019, first by failing to prescribe an alternative treatment when it was clearly obvious the initial treatment was without any success and second for failing to adhere to the outside specialist recommendation for an alternative treatment as Plaintiff's serious condition clearly required.

3. Dr. Figueroa's failure to promptly act was an exercise of deliberate indifference to the health, safety, welfare, and Constitutional Rights of Plaintiff under color of state law.

4. Dr. Figueroa, with full knowledge of the unconstitutional nature of his actions, exercised deliberate indifference to Plaintiff's serious medical needs which resulted in subjecting the Plaintiff to several months of pain and suffering while his contaminated infection turned Gangrene causing Plaintiff's leg to be amputate above the knee on October 10, 2019.

**V.**                           **INJURIES**

As a direct and proximate result of both Centurion and/or its agents or employees including Dr. Figueroa's deliberate indifference towards Plaintiffs serious medical needs, inadequate treatment and/or the unnecessary delays in treatment Plaintiff suffered in severe pain and discomfort for over three months before ultimately having his right leg amputated above the knee, thus violating Plaintiff's Eighth and Fourteenth Amendment Rights not to be subjected to such cruel and un usual punishment.

**VI**.                      **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Leon Buckhalter respectfully prays that this Honorable Court for an entry of judgment awarding the following relief:

A).  A declaration that the acts and omissions of the defendants described herein violated Plaintiff's Eighth and Fourteenth Amendment protection from cruel and unusual punishment through deliberate indifference.

B).  Compensatory damages in the amount of $100,000 dollars against each named defendant in their individual capacities.

C).   Punitive damages in the amount of $100,000 dollars against each named defendant in their individual capacities.

D).   Nominal damages in an amount to be determined by the Honorable Judge assigned to Plaintiff's case.

E).   Recovery of all attorney fees and cost of this action.

F).Any further relief this Honorable Court deems just, proper and equitable.

Plaintiff respectfully demands a trial on all issues so triable.

/s/ *Leon C. Burckhalter*

## VI.    <u>EXHAUSTION OF ADMINISTRATIVE<br>REMEDIES AND PROCEDURES</u>

**A.** Plaintiff's claim arised while confined at Suwannie C.I. Correction Institution, F.D.O.C.

**B.** Suwannie C.I. has a grievance procedure.

**C.** Plaintiff believes that Suwannee C.I.'s grievance procedure covers all his claim.

**D.** Plaintiff filed his grievance(s) from two institutions relating to his claim, which arose at Suwannee C.I.; all grievances were written in the Florida Department of Corrections.

**E.** If you filed a grievance:

1) Plaintiff filed a formal grievance to the Warden at Lake Butlers R.M.C. unit on November 16, 2019. Log #1911-209-067. <u>Composite Ex. (20) Pages 1-3</u>

2) Plaintiff's claims in his formal grievance was that Centurion and/or its agents or employees, specifically Dr. Figueroa acted with deliberate indifference towards his serious medical condition. <u>Composite Ex. (20) Pages 1-3</u>

3) Formal grievance Log #199-209-067 was denied on December 6, 2019, by both Medical Director and the Warden. <u>Composite Ex. (21)</u>

4) Plaintiff filed an appeal to the secretary's office in a timely manner on December 18, 2019, Log #19-6-44596. <u>Composite Ex. (22)</u>

5) Plaintiff's appeal was denied by the secretary's authorized representative on January 14, 2020. <u>Composite Ex. (23)</u>

6) Plaintiff further file another formal grievance on February 13, 2020, Log #2002-231-043 claiming that the outside specialist Dr. Soloman ordered and recommended that he have a needed procedure to correct the circulation in his right leg, and that Centurions Directors refused to approve. <u>Composite Ex. (24)</u>

7) Plaintiff's formal grievance, Log # 2002-231-043 was denied on February 24, 2020. <u>Composite Ex. (25)</u>

8) Plaintiff appealed formal grievance, Log #2002-231-043 to the secretary's office on March 5, 2020 in a timely manner and has never received any response from the secretary's authorized representative.

9) The rule clearly states that if the responding authority fails to respond in a timely manner the grievant has exhausted his administrative remedies.

**F.**

1) Not applicable

2) Plaintiff during the course of treatment for the infection in his lower right leg spoke to multiple medical staff such as: K. Hancock (LPN), M. Pearson (LPN), S. Kemp (LPN), L. Henderson (P.A.) showing all of the above mentioned staff the open and infected sores as they progressively got worse yet no alternative treatment was ever initiated, all employed at Suwannie C.I.

**G.** Not applicable


**VIII**.                  <u>**PREVIOUS LAWSUITS**</u>

Plaintiff has never filed any other lawsuits.

**IX.**                  <u>**CERTIFICATION AND CLOSING**</u>

Under Federal Rules of Civil Procedure (11), by signing below, I certify to the best of my knowledge, information, and belief that this complaint: 1) Is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2) Is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing case law; 3) The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and 4) The complaint otherwise complies with the requirements of Rule (11).

/s/ *Leon C. Buckhalter*
Leon C. Buckhalter,
DC#724366

## **FOR PARTIES WITHOUT AN ATTORNEY**

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk' Office may result in the dismissal of my case.

Date: 1/5/22

/s/ *Leon C. Buckhalter*
Leon C. Buckhalter, 724366
Dade Correctional Institution
19000 S.W. 377th Street
Florida City, Florida    33034